```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
ANTHONY ANDREONE,                                           :
                                                            :
                              Plaintiff,                    :   **MEMORANDUM DECISION**
                                                            :   **AND ORDER**
              - against -                                   :
                                                            :   17-cv-5748 (BMC)
NANCY A. BERRYHILL,                                         :
*Commissioner of Social Security*,                          :
                                                            :
                              Defendant.                    :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

    1.    Plaintiff seeks review of the decision of the Commissioner of Social Security, following a hearing before an Administrative Law Judge, that he is not disabled for the purpose of receiving disability insurance benefits. The ALJ found that plaintiff has severe impairments of degenerative joint disease in his left knee (post-surgery) and right shoulder; degenerative disc disease in his lumbar spine; history of pulmonary embolism; hypertension; left peroneal neuropathy; left shoulder tendinosis; post-procedure left wrist arthroscopic debridement; sleep apnea; obesity, and mild asthma. Notwithstanding these impairments, the ALJ concluded that plaintiff had sufficient residual functional capacity to perform sedentary work with certain limitations including some on climbing and reaching.

    2.    Plaintiff raises three points of error: (1) misapplication of the treating physician rule; (2) failure to develop the record; and (3) improper finding as to plaintiff's credibility. I agree with plaintiff that the ALJ's misapplication of the treating physician rule requires remand.

    3.    The ALJ discussed the opinions of plaintiff's treating physicians either inadequately or not at all. He did not refer to the medical records of plaintiff's pain management specialist, Dr. Germaine Rowe, and he dismissed the opinion of plaintiff's treating orthopedist,

Dr. Charles DeMarco, with essentially no analysis. The ALJ stated that he gave Dr. DeMarco's multiple opinions "little weight" because they "are not consistent with the objective findings, including the normal neurological findings." The ALJ did not specify which objective findings were inconsistent with Dr. DeMarco's opinions or which normal neurological findings he meant. The regulations require more. See 20 C.F.R. § 404.1527(c)-(d); see also Halloran v. Barnhart, 362 F.3d 28, 32-33 (2d Cir. 2004).

4. The ALJ's conclusory evaluation of Dr. DeMarco's opinion is particularly troublesome because, had the ALJ accepted his opinion, he would have concluded plaintiff was disabled. Dr. DeMarco opined that plaintiff can sit for less than four hours and can stand or walk for less than two hours. He also thought plaintiff could only lift or carry less than five pounds, would need "frequent" breaks; could not perform eight hours of work; requires medication that interfered with plaintiff's ability to function; and would be out sick at least three days a month. (Although Dr. Rowe did not provide a functional assessment of plaintiff, the opinions in his treatment notes are relevant for plaintiff's claim of lumbar spine impairment.).

5. The ALJ's cursory rejection of the opinions of plaintiff's treating physicians requires remand because the objective medical evidence could support their opinions about plaintiff's functional limitations. Without more elaboration from the ALJ about why he rejected Dr. DeMarco's opinion and without any explanation of the weight given to Dr. Rowe's opinions, the Court cannot conclude that the ALJ's non-disability finding was based on substantial evidence.

6. Despite the ALJ's failure to discuss the opinions of plaintiff's doctors, there would be substantial evidence to support his conclusion that plaintiff could do sedentary work, with limitations, if the record were limited to only plaintiff's knee and shoulder impairments.

7.      Although plaintiff had some joint disease from the arthroscopic surgery to repair his ACL, the objective evidence and the physical evaluations of his knee by his treating physician do not support the kind of excruciating pain that he professes to have.  For example, x-rays of plaintiff's left knee taken in October 2015 showed only "mild degenerative changes," including "mild narrowing of the medial joint compartment with mild spur formation" and "mild patellofemoral spur formation."  A March 2014 EMG showed only "mild and chronic left peroneal neuropathy, likely at the knee."  The ALJ might reasonably have concluded that the objective medical evidence about plaintiff's knee impairment alone did not support Dr. DeMarco's opinion about plaintiff's functional capacity (although the ALJ did not address plaintiff's impairments – or his doctors' conclusions about them – individually).

8.      Similarly, the objective medical evidence about plaintiff's shoulders – an MRI of his right shoulder in November 2013 and another of his left shoulder in November 2015 – showed that those impairments were also relatively minor.  The right shoulder MRI showed calcific tendinitis and some tearing.  The left shoulder MRI showed mild tendinosis, a small volume of fluid in the bursa, and possibly a SLAP tear ("[c]uff tendinosis with question for focal areas of low-grade undersurface fraying.  No evidence for a high-grade partial-thickness tear or full-thickness tear.").  Dr. DeMarco's eight treatment notes in 2014 and 2015 stated that plaintiff had decreased mobility in his right shoulder compared to the left, positive impingement sign, and positive apprehension test in his right shoulder.  Some of Dr. DeMarco's treatment notes stated that plaintiff has shoulder pain, but the notes focus primarily on pain in his knee and lumbar spine, which is consistent with plaintiff's testimony about which impairments cause him the most pain.

9. But the objective medical evidence for plaintiff's lumbar spine impairment and potential pain from it is different. A March 2014 EMG showed that plaintiff had "acute [and] chronic right L3 and L4 radiculopathy." Those test results support Dr. DeMarco's conclusion and plaintiff's testimony at the hearing that he experiences "severe" "pins and needle[s]" pain from his right hip to his left knee. Dr. DeMarco's seven treatment notes from May 2014 onward also note that plaintiff had tenderness and spasm in his lumbar spine and a 20-30% restriction in lumbar mobility. Dr. DeMarco's treatment notes in August 2014 and September 2015 state that plaintiff is "having more pain and dysfunction in the lumbar spine."

10. The ALJ might have concluded that the EMG results did not support the conclusions of Dr. DeMarco in light of other objective medical evidence that suggested a less serious lumbar spine impairment. (He did not address Dr. Rowe's treatment notes or the conclusions in them at all, so this possible conclusion is entirely hypothetical as to Dr. Rowe). For example, x-rays taken in October 2015 showed only "minimal diffuse degenerative lumbar disc change." An MRI taken in April 2014 (around the same time as the EMG) showed some degenerative changes at the L4-5 and L5-S1 discs, but no significant impingement of the nerve. The ALJ recited the results of all of these tests, including the EMG, but did not explain why he thought they were inconsistent with Dr. DeMarco's conclusion and plaintiff's own claims about his functional limitations.

11. Nor did the ALJ discuss the treatment notes by Dr. Germaine Rowe,[1] a board-certified specialist in pain management, taken during at least five sessions with plaintiff from

---

[1] Plaintiff describes the ALJ's rejection of Dr. DeMarco's opinion and implicit rejection of Dr. Rowe's opinion as a "failure to develop the record." Contrary to plaintiff's position, an ALJ does not have a duty to contact a treating physician every time he disagrees with the treating physician's conclusions. The regulations plaintiff cites are outdated; the current regulations only refer to the agency's duty to develop an applicant's complete medical history before reaching a decision. See 20 C.F.R. § 404.1512. More to the point, the problem here was the ALJ's failure to explain why, based on the objective medical evidence, he rejected Dr. DeMarco's opinion and failure to discuss Dr. Rowe's opinion at all, not his failure to develop the record.

August 2014 to May 2015. In those notes, Dr. Rowe concluded that plaintiff's complaints of lower back pain – pain that plaintiff said was "constant" and requires him to "constantly shift[] and mov[e]" while sitting" – were consistent with the radiculitis demonstrated by the EMG and the degenerative changes shown in the MRI. Dr. Rowe recommended one to three nerve root injections for his right L4-5 disc in March 2015 and administered at least one injection in April 2015. (Plaintiff testified that he received two injections, but it is not clear from the record that Dr. Rowe administered the second injection).

12. Because the ALJ did not adequately address the opinions of Drs. DeMarco and Rowe or provide reasons to reject their opinions in light of the objective medical evidence, the Court cannot conclude that the ALJ's finding of non-disability as to plaintiff's lumbar spine impairment, either singly or in combination with other impairments, was supported by substantial evidence.

13. Yet another piece of evidence the ALJ should have discussed is that at plaintiff's consultative examination by Dr. Sujit Chakrabarti, plaintiff did not get onto the examining table, professing that it caused too much pain to do so. The parties quibble over whether plaintiff "would not" or "could not" ascend the table, but Dr. Chakrabarti clearly maintained his own neutrality as to that question, and, therefore, the parties must as well – Dr. Chakrabarti reported that plaintiff "claimed" that he could not ascend the table. Like most doctors, Dr. Chakrabarti accepted plaintiff's self-reporting at face value. And there can be no question that based on plaintiff's testimony at the hearing, accepting his self-reporting would render him disabled.

14. That brings us to the question of plaintiff's credibility. Plaintiff complains in this proceeding that the ALJ's conclusory finding about his credibility was unwarranted in light of the ALJ's cursory analysis. I again agree that the ALJ did not discuss this critical issue

5

sufficiently. Although an ALJ need not accept a claimant's description of the severity of his symptoms if the objective medical tests do not support it, see 20 C.F.R. § 404.1529(a), here, the ALJ failed to explain why plaintiff's complaints of severe and debilitating lower back pain were not credible in light of the EMG evidence. See Lugo v. Apfel, 20 F. Supp. 2d 662, 663 (S.D.N.Y. 1998).

15. I also agree with plaintiff that the ALJ's observation about his "conservative" treatment was partially an overstatement. It is perfectly understandable that having almost died from an embolism after a fairly routine knee surgery, plaintiff was reluctant to have another surgery. It may be somewhat probative of the ALJ's conclusion that plaintiff declined physical therapy on the purported ground that he had tried it and it had not helped his knee. But the ALJ did not so opine in his opinion, either as part of a discussion of plaintiff's credibility or as a reason to doubt the conclusions of plaintiff's treating physicians and other doctors.

16. Plaintiff's motion for judgment on the pleadings [10] is GRANTED. Defendant's motion [15] is DENIED. The case is remanded to the Commissioner to evaluate the weight to be given to the opinions of Dr. DeMarco and Dr. Rowe about plaintiff's lumbar spine impairment in light of the objective medical evidence referenced in this decision.

**SO ORDERED.**

U.S.D.J.

Dated: Brooklyn, New York
July 17, 2018